UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EMMA DENNIS-KNIERIEM,<br>    Plaintiff, | )<br>)<br>)<br>) |
| v. | )   C.A. No. 23-cv-048-JJM-PAS |
| BROWN UNIVERSITY,<br>    Defendant. | )<br>)<br>)<br>)<br>) |

ORDER

Plaintiff Emma Dennis-Knieriem was a student at Brown University when she reported that John Doe, another Brown student with whom she was in a romantic relationship, sexually assaulted her.[1] She reported the incidents to Rene Davis, Brown's Title IX Program Officer, who advised her of her options under Brown's complaint process and walked her through a resolution process. Unsatisfied with Brown's response, Emma sued Brown, alleging violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681-88, and the Rhode Island Civil Rights Act of 1990 ("RICRA"), R.I. Gen. Laws § 42-112 et seq. After motion practice reduced Emma's case to "Post Assault" Title IX and RICRA claims (Counts I-III, XI), and a state-law claim for Intentional Infliction of Emotional Distress ("IIED") (Count IX), see ECF No. 34, Brown moves for summary judgment on all remaining claims. ECF No. 72.

---

[1] The Court will refer to the parties by their first names for ease of reading, meaning no disrespect to any party.

I.  BACKGROUND

The facts here are largely undisputed. Emma enrolled at Brown in September 2017. The next month, she began dating John, a Brown junior. Their relationship ended seven months later, and Emma and John ceased all communication. Emma met with Ms. Davis in November 2018 to report allegations against John, accusing him of emotional abuse and inappropriate touching.[2] Ms. Davis met Emma twice, telling her that she could proceed through a formal or informal resolution process; Emma chose to go through with a formal complaint against John and Ms. Davis helped her draft it.

At the end of November, Ms. Davis provided John with a copy of Emma's formal complaint and informed him about the complaint process. Brown's Title IX Office also issued a mutual no-contact order to Emma and John. In early December 2018, John informed Ms. Davis that he had retained an attorney to serve as his advisor. He again requested clarification regarding Emma's specific allegations against him, and more specifically, asked that she provide him with a document where she spelled out her allegations. John also requested an extension to submit his response due to

---

[2] In her opposition to Brown's motion, Emma raises an additional report of sexual harassment by James Roe, another Brown student, during the fall 2018 semester, which had no connection to her prior relationship with John. Emma did not plead such allegations in the First Amended Complaint ("Complaint"), so the Court does not consider them here. *See, e.g., Katz v. Belveron Real Est. Partners, LLC*, 28 F.4th 300, 309 (1st Cir. 2022) (the First Circuit has "routinely rejected" attempts to "amend [a] complaint through [an] opposition to defendants' motion for summary judgment."). Also, Emma's reporting of the encounter with James and Title IX Program Officer Davis' feedback conversation with him occurred before January 28, 2019, so they are time-barred events.

academic deadlines, which Ms. Davis granted. In response to John's request, Ms. Davis informed Emma that, in response to John's request for more documentation, she sent him copies of emails exchanged between Emma and the Title IX Office during November, in which she made her specific allegations against John.

Emma was unhappy that Ms. Davis provided Mr. Doe with her emails and noted that she no longer wanted to work with her. She requested a meeting with Ms. Davis's supervisor, Shontay Delalue, Brown's Vice President for Institutional Equity and Diversity; during that scheduled meeting, she saw John as he was submitting his written response to her complaint. The two students did not communicate, but Emma was distressed and reported the encounter to the Title IX Office.

Derek DeBobes, Brown's then Assistant Vice President for Institutional Equity and Diversity, was designated as a liaison for Emma because of her refusal to work with Ms. Davis. She was also assigned an advisor to guide her through the complaint process moving forward. Emma alleges that she believed that Ms. Davis was completely removed from her case but, in their depositions, Ms. Delalue and Mr. DeBobes made clear that Ms. Davis, as Brown's Title IX Program Officer, remained responsible for the administration of Brown's complaint process to investigate and resolve Emma's complaint.

Once the Title IX Office had processed Emma's complaint and received John's response, Brown retained an external investigator, Attorney Jessica Katz, to start an investigation during which Emma had the opportunity to provide Attorney Katz with

3

relevant evidence, information, and more allegations regarding her former relationship with John. Attorney Katz interviewed Emma and John as well as multiple other witnesses they each designated.

The day before the Title IX Council was to hold a hearing on her complaint, John submitted a complaint against Emma to the Title IX Office, alleging sexual misconduct during the end of their relationship. Ms. Davis, in her discretion, elected to not inform Emma of John's complaint until after her hearing. The Title IX Council hearing panel heard Emma's complaint against John as originally scheduled and determined that a preponderance of evidence did not support holding John responsible for a Title IX Policy violation. Emma chose not to appeal the decision. John graduated from Brown in May 2019.

The Title IX Office proceeded with the investigation and resolution of John's complaint. Brown appointed an internal investigator, Lawrence Angelo, who interviewed Emma and John and reviewed the evidence relating to the incident in question. In the Fall of 2019, the Title IX Council issued its findings, stating that Emma engaged in sexual misconduct and gave her a two-semester probation. She did not appeal the decision or penalty. Emma was fully able to participate in Brown's campus programs and activities until the COVID-19 pandemic disrupted her senior year. Emma elected to study remotely and graduated from Brown in May 2021 with an excess of credits and strong academic performance.

## II.  STANDARD OF REVIEW

A party is entitled to summary judgment if the movant shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  A party can show a genuine dispute by citing to materials in the record, including "depositions, documents, electronically stored information, affidavits or declarations, stipulations … admissions, interrogatory answers, or other materials," or by showing that the materials cited either do not establish a genuine dispute or are not supported by admissible evidence. *Id.*

Summary judgment is mandated against a party who, given adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case … on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A complete failure of proof of an essential element shows that there is "no genuine issue as to any material fact" because if one element fails, all other facts are rendered irrelevant; it entitles the moving party to "judgment as a matter of law" because, by definition, the nonmoving party cannot carry their burden at trial. *Id.* at 323.

## III.  DISCUSSION

Brown argues in its motion that there are no material issues of disputed fact as to Emma's remaining claims for gender discrimination and IIED such that this Court should decide in its favor as a matter of law.  Emma argues that there are many material disputes in this case that are better suited to a jury's determination.  The law the Court is to apply here is generally not in dispute.  The Court's brief discussion

of the guiding legal principles and its highlighting of the material facts in the record follows.

### A. Title IX (Counts I, II, III) and RICRA (Count XI)

To succeed on a "deliberate indifference" claim, a plaintiff must show that (1) "she was subject to 'severe, pervasive, and objectively offensive' sexual harassment"; (2) "the harassment caused the plaintiff to be deprived of educational opportunities or benefits"; (3) the funding recipient was aware of such harassment; (4) the harassment occurred "in [the funding recipient's] programs or activities"; and (5) the funding recipient's response, or lack thereof, to the harassment was "clearly unreasonable." *Porto v. Town of Tewksbury*, 488 F.3d 67, 72-73 (1st Cir. 2007) (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644-50 (1999)).

"[I]n the Title IX context, 'funding recipients are deemed deliberately indifferent to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'" *Id.* at 73 (quoting *Davis*, 526 U.S. at 648). "[A] claim that the school system could or should have done more is insufficient to establish deliberate indifference." *Id.* Deliberate indifference is a "stringent standard of fault, requiring proof that a[n]… actor disregarded a *known or obvious* consequence of his action" or inaction. *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997) (emphasis in original). To determine whether an institution has subjected a student to harassment, "the institution's deliberate indifference must, at a minimum, have caused the student to undergo harassment, made her more vulnerable to it, or made

her more likely to experience it." *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 171 (1st Cir. 2007), *rev'd on other grounds*, 555 U.S. 246 (2009), (citing *Davis*, 526 U.S. at 645).

Brown argues that Emma's discrimination claims fail as a matter of law because she does not meet several elements set forth in *Davis*.[3] The main sticking point of Emma's case and Brown's motion thereon, however, relates to the final element–whether Brown's response to her reports of sexual harassment was clearly unreasonable presented and therefore deliberately indifferent. After reviewing the record, the Court agrees with Brown.

The undisputed evidence shows that Brown's response to Emma's reports of harassment was not unreasonable given the circumstances. *See* ECF No. 74 ¶¶ 75-253. Once Emma reported John's conduct to Ms. Davis, Ms. Davis met with her multiple times, advising her of her options, assisting her with developing her complaint, and facilitating any academic accommodations Emma needed. Brown also issued a mutual no-contact order. At Brown's request, Attorney Katz began an investigation where Emma had the opportunity to provide relevant evidence, information, and more allegations regarding her former relationship with John. Attorney Katz also interviewed many witnesses that each party identified. Attorney

---

[3] There is no evidence that she was deprived of any educational programs or activities at Brown—not only was she able to graduate with high grades and an excess of credits, but she was also an active member of the Brown community and participated in a variety of programs.

Katz's investigation also got John's side of the story;[4] she interviewed him and others he named, and he provided an extensive text message history between him and Emma to elaborate on their relationship. She had a hearing and, based on the evidence gleaned during the investigation, the panel made its decision. Emma chose not to appeal. On this record, the Court cannot say that these undisputed facts support a finding of deliberate indifference.

Emma argues that there are disputed issues of material fact on the harassment, hostile environment, and discrimination she encountered during every step of the Title IX investigation. She notes that Brown appointed an inexperienced advisor to assist her, raises the admittedly chance encounter with John at the Title IX Office that she says caused her distress and discomfort, argues that Brown was deliberately indifferent to her request that Ms. Davis be removed from her case,[5] and also argues that Brown was deliberately indifferent when Ms. Davis used her discretion to wait to tell her about John's complaint against her until after her hearing regarding her complaint. She believes that deciding not to disclose John's

---

[4] Per Brown's policy, Ms. Davis did also advise John throughout this process, informing him of the formal complaint and the allegations therein. John filed his own complaint against Emma and Brown's Title IX Office adjudicated that complaint to finality. Emma did not appeal this decision either.

[5] Emma argues that she was told that Ms. Davis would no longer be handling her case, yet the evidence does not support this contention. Mr. DeBobes became her liaison and the main line of communication with Emma, but Ms. Delalue and Mr. DeBobes made clear in their depositions that Ms. Davis, in her capacity as Brown's Title IX Program Officer, remained responsible for the administration of Brown's complaint process to investigate and resolve Emma's complaint.

complaint immediately prejudiced her and sabotaged the resolution of her own complaint.

There is no evidence that any of these perceived procedural deficiencies in Brown's decision-making here amounted to deliberate indifference. First, there is no evidence—other than that John was not found responsible—that these circumstances were rooted in gender-based discrimination. Secondly, Emma could have appealed the panel's decision against her case if she felt she was inadequately advised or if Ms. Davis' continued oversight of the complaint process somehow prejudiced her case, but she chose not to do so. And there is no evidence that Ms. Davis' decision to temporarily withhold the existence of John's complaint from her complicated the resolution of her complaint. The investigation was complete and there is no evidence that the existence of John's complaint (filed the day before) impacted the hearing in any way. She did not get her desired outcome, but the Court does not find from the evidence that Brown sabotaged the resolution of Emma's complaint by waiting to tell her about John's complaint until after her hearing.

The law does not require educational institutions to "take heroic measures, to perform flawless investigations, to craft perfect solutions, or to adopt strategies advocated by [students]." *Fitzgerald*, 504 F.3d at 174. Brown's response was not "so lax, so misdirected, or so poorly executed as to be clearly unreasonable under the known circumstances." *Fitzgerald*, 504 F.3d at 174. Brown has presented undisputed facts in its motion to demonstrate that its response to her reports of peer sexual

9

harassment was not deliberately indifferent leading to a Title IX violation.  Brown's Motion for Summary Judgment as to Counts I-III and XI is GRANTED.

### B.  IIED

"To create liability for intentional infliction of emotional distress in Rhode Island, '(1) the conduct must be intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress in question must be severe.'" *Doe v. Brown Univ.*, 43 F.4th 195, 209 (1st Cir. 2022) (quoting Gross v. Pare, 185 A.3d 1242, 1246 (R.I.), *as corrected* (Aug. 16, 2018) (emphasis removed).  To find liability, Brown's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hoffman v. Davenport-Metcalf*, 851 A.2d 1083, 1090 (R.I. 2004) (quoting Restatement (Second) Torts § 46 (1965)).  A plaintiff must also show some "physical symptomatology resulting from the alleged improper conduct." *Brown Univ.*, 43 F.4th at 209 (quoting *Vallinoto v. DiSandro*, 688 A.2d 830, 838 (R.I. 1997)).

Emma has not pointed to any evidence in the record that could rise to this high standard.[6]  Her claim challenges Brown's investigation and what she alleges was

---

[6] The disputed facts that the First Circuit found in reversing a grant of summary judgment on a Brown's student's IIED claim in *Doe v. Brown University*, is not instructive here.  43 F.4th at 210.  In that case, the Court considered the parties' relationship, the fact that Brown faculty members were aware of the plaintiff's "enhanced susceptibility to extreme emotional distress," and determined that a jury

10

Ms. Davis' outrageous and intentional conduct during her complaint process. She argues that "Brown lied to her about the [no-contact order], resulting in Emma's run-in with her assailant at the Title IX office" but she testified that she has no information that the Title IX Office arranged for her and John to be present in its office space at the same time. ECF No. 74 ¶ 135. She also argues that Ms. Davis intentionally stayed involved in her case even though she had asked for Ms. Davis to be removed, which resulted in her decision not to tell Emma about John's complaint filed the day before her hearing. She argues that she could have used this information as evidence of John's manipulation and abuse. Ms. Delalue and Mr. DeBobes testified that Ms. Davis was involved to the extent that she remained Brown's Title IX coordinator and was responsible for oversight of all complaints even though she was no longer Emma's direct contact. ECF No. 74 ¶ 149. And Ms. Davis testified that she decided not to tell Emma about John's complaint before her hearing because she did not want to distract or upset her. *Id.* ¶ 220. She added that the two complaints involved different situations and John's complaint had not yet been investigated so his complaint was not pertinent to Emma's hearing. *Id.* ¶¶ 221-22. The Court does not find that any of this behavior is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hoffman*, 851 A.2d at 1090.

---

could find that Brown's attempt to coerce him into withdrawing by piling on charges against him while he was vulnerable and stressed "went beyond all bounds of decency." *Id.* That is not the case here, not even close.

11

The Court recognizes that Emma experienced distress in her relationship with John and its aftermath but there is no evidence that Ms. Davis acted with any intent to cause Emma such distress in marshaling her complaint through Brown's Title IX process. The Court GRANTS Brown's motion on her IIED claim, Count IX.

## IV. CONCLUSION

The Court GRANTS Brown University's Motion for Summary Judgment. ECF No. 72.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

August 27, 2025